ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV - 5 2014

JAMES N. HATTEN, Clerk
By: \_\_\_\_\_ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION



| | |
|---|---|
| THE UNITED STATES OF AMERICA ex rel. ANDREW FELDMAN, | Civil Action No. |
| Plaintiffs, | JURY TRIAL DEMANDED |
| vs. | FILED UNDER SEAL |
| AMERICAN DAWN, INC., ADNAN RAWJEE, HABIB RAWJEE, and MAHMUD RAWJEE, | 1 14-CV-3563 |
| Defendants. | |

## COMPLAINT

NOW come Plaintiffs, the United States of America ex rel. Andrew Feldman, by and through undersigned counsel, and file this Complaint for Violations of the False Claims Act, 31 U.S.C. § 3729 et seq., stating as follows:

### I.    INTRODUCTORY STATEMENT

1.  This is an action brought on behalf of the United States of America by Plaintiff Andrew Feldman ("the Relator" or "Mr. Feldman") against the Defendant, American Dawn, Inc. ("the Defendants" or "ADI") for treble damages and civil penalties pursuant to the Qui Tam provisions of the Federal Civil False Claims Act, 31 U.S.C.A. §§ 3729-33 ("FCA").

2.  Pursuant to 31 U.S.C. § 3730(b)(2), this action is brought in camera and under seal.

3.  As required by the FCA, 31 U.S.C. § 3730(b)(2), the Relator has provided to the Attorney General of the United States and to the United States Attorney for the Northern District of Georgia a statement of all material evidence and information related to this Complaint.

4.  The aforementioned disclosure statement is supported by substantially all material evidence known to Relator at his filing establishing the existence of the relevant false claims.

5.  Because the aforementioned disclosure statement includes attorney-client communications and work product of the Relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relator understands this disclosure to be confidential.

6.  The Relator in this case is an individual with independent, direct, unique and personal first-hand knowledge of the unlawful practices of the Defendants.

7.  The Defendants have violated numerous federal laws, including, but not limited to, the FCA by mislabeling and/or misidentifying goods imported into

the United States for the purposes of securing more favorable tariff rates for any such goods.

8. The purpose of these acts was to allow the Defendants to pay a lower tariff on imported goods, thereby depriving the United States of tariff revenue.

## II.  PARTIES

9. The material times to this action are from January 2005 through April 2012.

10. Mr. Feldman is an adult individual whose principal residence is in Kennesaw, Georgia.

11. The United States of America is named herein as a plaintiff because the violations described in this complaint constitute the purposefully improper designation and labelling of imported goods with the intent, design and scheme to reduce the custom and tariff duties to which those goods would otherwise be subject, thus depriving the United States of America from revenues and monies.

12. ADI is a corporation that maintains its principal place of business at 401 West Artesia Boulevard, Compton, CA 90220.

13. Adnan Rawjee ("A. Rawjee") is an individual who maintains his principal place of business at 401 West Artesia Boulevard, Compton, CA 90220.

14. Habib Rawjee ("H. Rawjee") is an individual who maintains his principal place of business at 401 West Artesia Boulevard, Compton, CA 90220.

15. Mahmud Rawjee ("M. Rawjee") is an individual who maintains his principal place of business at 401 West Artesia Boulevard, Compton, CA 90220.

### III.   JURISDICTION

16. Jurisdiction of this Court over the matters in this Complaint is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367(a), and on 31 U.S.C. § 3730(b).

### IV.   VENUE

17. As required under the False Claims Act, 31 U.S.C.A. § 3730, Mr. Feldman has provided the Attorney General of the United States and the United States Attorney for the Northern District of Georgia with a statement of all material evidence and information related to the complaint.

18. The aforementioned disclosure statement provides specific, supportive facts for the basis of charging for violations of U.S. customs and import statutes by ADI and its principles for their purposeful and intentional actions.

19. This Court has jurisdiction over this matter pursuant to 31 U.S.C. § 3730(b) in that the claims for relief in this action are brought in the name of the United States Government.

20. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that ADI conducts business and owns property in this judicial district.

21. This case is not based or premised on public disclosure.

## V.   FACTS

22. ADI manufactures textile products (including industrial aprons and towels, bed linens, blankets, surgical towels, patient gowns, and chef and butcher uniforms) that are sold in wholesale, commercial, and retail markets.

23. ADI primarily manufactures its products overseas, with a majority of such manufacture occurring in Pakistan, and it then ships its products to customers in the United States and Canada.

24. ADI imports its manufactured products from overseas; transporting them to the United States via container ship.

25. Mr. Feldman is a former employee of ADI; he had been hired in September 1996.

26. At the time of his ultimate termination from ADI, Mr. Feldman's title was Regional Sales Manager, Eastern Division, Georgia Warehouse, and he was based at ADI's regional location in Atlanta, Georgia.

27. Mr. Feldman worked as a commissioned sales person for ADI, and his sales territory consisted of Tennessee, Mississippi, Alabama, North Carolina, South Carolina, Georgia, Florida, and Puerto Rico.

28. Because they are imported from outside of the United States and its territories, the products produced by ADI are subject to U.S. import tariffs.

29. The principal owners of ADI are A. Rawjee, M. Rawjee, and H. Rawjee (collectively "the Rawjees").

30. The importation of goods by sea are subject to the provisions of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1202 et seq.

31. Pursuant to the provisions of the Tariff Act, 19 U.S.C. § 1431(c)(1)(B), any vessel entering the United States must produce a manifest cataloging the goods being imported into the United States.

32. The Tariff Act, 19 U.S.C. § 1436(a)(2), imposes penalties for the presentation of any false or falsified document to customs officials.

33. The applicable tariff rates vary depending on the particular product being imported.

34. Per industry practice, different classes of goods are assigned different numbers so as to facilitate the imposition of correct tariff and customs duties.

35. The Harmonized Tariff Schedule of the United States ("the U.S. HTS") establishes varying tariff rates that are imposed upon different products according to their classification and characteristics.

36. The U.S. HTS defines "terry towels" as "toilet linen and kitchen linen of terry toweling or similar terry fabrics or cotton" and imposes a 9.1% tariff on any such imports.

37. The U.S. HTS defines "polishing cloths" as "dust cloths, mop cloths, and polishing cloths of cotton" and imposes a 4.1% tariff on any such imports.

38. The U.S. HTS defines "shop towels" as "shop towels dedicated for use in garages, filling stations, and machines shop" and imposes a 5.1 % tariff on any such imports.

39. In order to secure more favorable import tariff rates for their products, ADI employees presented false and/or falsified information to U.S. customs officials by mislabeling products imported from ADI's overseas plants.

40. ADI's favored means of securing lower tariff rates was to mislabel high-tariff items, such as "terry towels," as "polishing cloths" subject to the 4.1% tariff.

41. ADI's customers would have been wholly unaware that the towels and other like products they purchased had been classified as "polishing cloths."

42. In his position as Regional Sales Manager, Mr. Feldman had access to information related to product descriptions and designations.

43. For example, in 2002, ADI imported "terry bath towels" as "polishing cloths," a product subject to a lower tariff rate that "terry bath towels."

44. Earlier, in 2001, ADI mislabeled items in large-volume sales to Aramark in an attempt to avoid higher import duties and tariffs.

45. Based on his inside knowledge regarding product designations, Mr. Feldman was aware that the premium items being sold to ADI's customers were given the erroneous designation of "polishing cloths" and, as such, were being imported into the United States at tariff rates that were as much as 5 percentage points lower than the actual tariff rates applicable for such products.

46. ADI routinely mislabeled products in order to facilitate their importation under a lower tariff rate.

47. As of February 1, 2006, ADI had in-stock over 400,000 units labeled as terry polishing cloths and almost 900,000 units labeled as non-terry polishing cloths; the former were actually bath and hand towels and the latter were actually shop towels.

48. In July 11, 2007, ADI co-owner H. Rawjee forwarded documents informing ADI of product coming from Jasmine Mills in India and alerting them to

the impending arrival of the shipment container with over 100,000 "polishing cloths" in multiple sizes for their New Jersey warehouse.

49. Based upon knowledge and belief these items being imported from India were not "polishing cloths."

50. Between 2005 and 2009, ADI sold 100% cotton terry hand towels that, for purposes of securing a more favorable tariff rate, were mislabeled as "polishing cloths" to the following customers:

    a.    ALSCO;

    b.    the American Hotel Register;

    c.    Associated Hospital Services in Detroit, Michigan;

    d.    the Lipshitz Sales Company;

    e.    Service Care in Warren, Michigan; and

    f.    N.T.I., Inc.

51. Between 2006 and 2011, ADI sold pre-washed, pre-bleached towels mislabeled as "polishing cloths" to the following purchasers:

    a.    AmeriPride;

    b.    Associated Hospital Services in Detroit, Michigan;

    c.    Clean Industries;

    d.    Cintas Corporation;

  e. Paris Companies;

  f. West Michigan Uniform;

  g. Lechner & Sons;

  h. ALSCO;

  i. UniFirst Corporation; and

  j. G&K Services.

52. In 2007, ADI had in stock over 10 million units designated as "polishing cloths" which were valued at $800,000.00.

53. Based upon knowledge and belief, these units were not "polishing cloths" but rather were other textile items that should have been subjected to a higher import tariff.

54. In 2009, ADI shipped items with a total value of $6,000,000.00 from its warehouse in Chicago; these items were falsely designated as "polishing cloths."

55. In September 2010, the Angelica Corporation ("Angelica") contracted to purchase 300,000 bath towels from ADI; at the same time, ADI phased out the product designation for those particular bath towels and imported them under the polishing cloths designation.

56. On December 22, 2010, ADI received 6,000 units falsely designated as polishing cloths at its Georgia warehouse.

57. One day later, on December 23, 2010, ADI sold 8,400 units falsely designated as polishing cloths to an account based in Manassas, VA.

58. In February of 2011, the Divisional Director of ADI Healthcare forwarded "Key Core Item Costs" to members of the ADI sales team that included products with designations reserved for items sold as "polishing cloths."

59. In a price list generated in 2011 for a key customer, Aramark, ADI assigned to 100% cotton terry hand towels product designation number that were for polishing cloths; ADI sold these misidentified products to the Aramark facility in Orlando, FL.

60. In the current ADI catalogue, a bath towel listed under "ultimate towels and washcloths" is given the same product designation code as "polishing cloths;" based upon knowledge and belief these bath towels, which are subject to a high tariff, were imported as polishing cloths, which are subject to a lower tariff.

61. To the extent to which ADI saved any money by virtue of the fact that it was able to import goods under a lower tariff rate, it did not pass on any such savings to its customers; to the contrary, ADI subjected its customers to significant price increases.

62. For example, notwithstanding any ill-gotten "savings" in terms of customs duties, in February 2010, even though there was a significant inventory of items that were produced at a lower price, ADI nevertheless raised its prices on all of its products on the grounds that *incoming* product was being produced at higher cost.

63. ADI management, including H. Rawjee, was aware that ADI was not charging its customers (for example, ALSCO) with the best industry price but rather was passing price increases (which were offset in part by "savings" on tariffs) onto its customers.

64. ADI "padded" the price of the goods so that the actual increase in unit price was disproportionate to the actual production price of the goods.

65. ADI increased its prices by almost five percentage points between June 2010 and July 2010.

66. Due in part to the aforementioned "padding" combined with the successful avoidance of customs duties, ADI realized significant profit increases, including a 4% increase in gross profit in July 2010.

67. Because ADI consistently designated terry cloth products, bath towels, and other like products as "polishing cloths," ADI successfully avoided the

appropriate tariff rates and was able to import comparatively expensive goods under the lowest possible import rate available for textile products.

68. ADI violated the Tariff Act and the FCA when its employees knowingly presented information regarding improperly labeled and/or identified imported products to customs officials.

69. Plaintiffs, the United States ex rel. Mr. Feldman, demand a jury trial.

## VI.   CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FALSE CLAIMS ACT AND OF THE TARIFF ACT
### Plaintiff U.S. ex rel. Andrew Feldman v. ADI, Inc.

70. The preceding paragraphs are incorporated as if set forth at length herein.

71. Under the FCA, 31 U.S.C. § 3729(a)(1)(G), "any person who...knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government...is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000...."

72. Under the FCA, any party with knowledge of any fraudulent claim presented to the U.S. Government may bring a civil action on behalf of the Government for any violation of Section 3729 of the FCA.

73. By virtue of his position with ADI, Mr. Feldman was in receipt of information regarding ADI's fraudulent mislabeling of imported products, and he was aware that any such mislabeling was intended to avoid higher import tariffs and duties.

74. On numerous occasions and in direct violation to the Tariff Act and regulations enacted pursuant to that statute, ADI presented falsified information to customs officials and/or caused falsified information to be presented to customs officials for the purpose of avoiding higher customs tariffs.

75. The mislabeling and/or misidentification of the goods sold by ADI represents a violation of the customs and import laws of the United States.

76. The United States has been damaged by ADI's misrepresentations in an amount estimated by the Relator to be not less than $1,000,000.00 in the form of customs tariffs avoided by the Defendant between 2005 and 2011 in that ADI consistently mislabeled items imported into the United States in order to secure a more favorable tariff rate.

77. Wherefore, the United States is entitled to damages from ADI in accordance with the provisions of 31 U.S.C. §§ 3729 to 3733, of which up to 25% should be paid to Mr. Feldman as Relator, and such further relief as this Court may determine to be appropriate.

### COUNT II: CONSPIRACY TO VIOLATE
### THE FALSE CLAIMS ACT
### Plaintiff U.S. ex rel. Andrew Feldman v.
### Adnan Rawjee, Habib Rawjee, and Mahmud Rawjee

78. The preceding paragraphs are incorporated as if set forth at length herein.

79. Under the FCA, 31 U.S.C. § 3729(a)(1)(C), any person who enters into any combination for the purposes of violating a substantive provision of that statute is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000...."

80. Under the FCA, any party with knowledge of any fraudulent claim presented to the U.S. Government may bring a civil action on behalf of the Government for any violation of Section 3729 of the FCA.

81. By virtue of his position with ADI, a business entity owned and controlled by the Rawjees, Mr. Feldman was in receipt of information regarding ADI's fraudulent mislabeling of imported products, and he was aware that any such mislabeling was intended to avoid higher import tariffs and duties.

82. The Rawjees combined, conspired, and agreed together to defraud the United States by knowingly submitting false and/or falsified information regarding imported products to the United States for the purpose of securing a more favorable tariff rates for premium imported goods, in contravention of the FCA, to the damage of the treasury of the United States of America.

83. On numerous occasions and in direct violation to the Tariff Act and regulations enacted pursuant to that statute, the Rawjees and/or their employees or agents presented falsified information to customs officials and/or caused falsified information to be presented to customs officials for the purpose of avoiding higher customs tariffs on imported goods.

84. The mislabeling and/or misidentification of the goods imported on behalf of the Rawjees represents a violation of the customs and import laws of the United States.

85. The United States has been damaged by ADI's misrepresentations in an amount estimated by the Relator to be not less than $1,000,000.00 in the form of customs tariffs avoided by the Defendant between 2005 and 2011 in that ADI consistently mislabeled items imported into the United States in order to secure a more favorable tariff rate.

86. Wherefore, the United States is entitled to damages from ADI in accordance with the provisions of 31 U.S.C. §§ 3729 to 3733, of which up to 25% should be paid to Mr. Feldman as Relator, and such further relief as this Court may determine to be appropriate.

Respectfully submitted this 5th day of November, 2014.

McKENNA LONG & ALDRIDGE, LLP

_____
Nathan D. Garroway
Georgia Bar No. 142194
ngarroway@mckennalong.com
Jeffrey A. Zachman
Georgia Bar No. 254916
jzachman@mckennalong.com
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
(404) 527-4000 (tel.)
(404) 527-4198 (fax)

Of Counsel:
LIEBER HAMMER HUBER & BENNINGTON, P.C.
James B. Lieber (*pro hac vice* to be applied for)
PA I.D. No. 21748
Brad R. Korinski (*pro hac vice* to be applied for)
PA I.D. No. 86831
5528 Walnut Street
Pittsburgh, PA 15252
(412) 687-2231 (tel.)
(412) 687-3140 (fax)